CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 22 2009

JOHN F. CORCORAN, CLERK
BY: /s/ J. Clatt
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) Criminal No. 7:09cr00028 |
| v. | ) |
| | ) |
| | ) MEMORANDUM OPINION |
| LUIS GUSTAVO AVILES-NARANJO, | ) |
| | ) By: Samuel G. Wilson |
| Defendant. | ) United States District Judge |
| | ) |

The defendant, Luis Gustavo Aviles-Naranjo, is charged with possession with intent to distribute a mixture or substance containing cocaine powder in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B & C) (2006). Aviles-Naranjo has moved to suppress statements he made to law enforcement officials both during and after custodial interrogation. He claims he did not voluntarily, knowingly, and intelligently waive his Miranda rights and that his post-custodial interrogation violated his Sixth Amendment right to counsel. Having conducted an evidentiary hearing, the court finds that Aviles-Naranjo voluntarily, knowingly, and intelligently waived his Miranda rights and that his custodial statements are admissible against him. The court also finds that Aviles-Naranjo's non-custodial statements do not implicate the Sixth Amendment because neither state nor federal authorities had charged him with an offense at the time he made the statements. Therefore, the court denies Aviles-Naranjo's Motion to Suppress.

I.

Aviles-Naranjo is a Cuban national who is fluent in Spanish but has only limited English speaking abilities. On April 28, 2009, Aviles-Naranjo and a confidential informant, who spoke

only English, engaged in a pre-arranged drug transaction. Aviles-Naranjo sold cocaine to the informant. Once the transaction was complete, members of the Roanoke County Police and Agent James Mullan, a deportation officer with the United States Immigration and Customs Enforcement ("USICE"), took him into custody for questioning. Agent Mullan read Aviles-Naranjo his <u>Miranda</u> rights in English and in Spanish. Agent Mullan then asked Aviles-Naranjo in Spanish if he understood his rights. He said yes. Shortly thereafter, Aviles-Naranjo was taken to the RCPD where another USICE officer, Agent Preston Rogers, again read him his rights in Spanish. Agent Rogers then asked Aviles-Naranjo in Spanish if he understood his rights. He replied that he did. Aviles-Naranjo orally waived his rights and freely discussed his criminal activity with Agent Rogers and Roanoke City Police Lieutenant Ewers for over an hour and a half before requesting an attorney. Following his request, all questioning ceased and Lieutenant Ewers called an attorney for him. Aviles-Naranjo was released without being charged.

On May 6, 2009, at the request of law enforcement officials, Aviles-Naranjo returned to the RCPD to retrieve vehicles that had been seized on the night of the forfeiture. When he arrived at the RCPD, Officer Tim Stuart of the Virginia State Police questioned him regarding a firearm that was seized during the investigation. At the time of the interrogation Aviles-Naranjo had retained counsel, though formal charges had not yet been brought against him.

## II.

Aviles-Naranjo claims that the statements he made to law enforcement officials on April 28, 2009, while he was in custody should be suppressed because his <u>Miranda</u> waiver was not voluntary, knowing, and intelligent. He argues that, as a recent immigrant from Cuba and in light of the fact that his rights were not individually and repeatedly explained to him, he was not fully

aware of the rights he was waiving or the consequences of that waiver. The court finds otherwise.

A valid <u>Miranda</u> waiver requires that the waiver be made "voluntarily, knowingly and intelligently." <u>Miranda v. Arizona</u>, 384 U.S. 436, 444 (1966). To determine voluntariness, the court considers the "totality of the circumstances." <u>Moran</u>, 475 U.S. at 421. The "crucial inquiry" is whether the defendant's will or his "capacity for self-determination" has been "critically impaired" or "overborne" by the government's agents.[1] <u>United States v. Guay</u>, 108 F.3d 545, 549 (4th Cir. 1997) (citing <u>United States v. Pelton</u>, 835 F.2d 1067, 1071–72 (4th Cir. 1987). A "waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." <u>Moran v. Burbine</u>, 475 U.S. 412, 421 (1986).

Law enforcement officers read Aviles-Naranjo his <u>Miranda</u> rights in his native tongue at least twice. On both occasions, the officers asked him if he understood those rights. Each time he responded affirmatively. There is no evidence to suggest that Aviles-Naranjo's lack of fluency in the English language inhibited his ability to understand his Spanish-read <u>Miranda</u> rights.[2] Furthermore, the fact that Aviles-Naranjo at some point requested counsel indicates he was fully aware of and understood his rights. There is also no evidence of police coercion, the

---

[1] The Supreme Court has made it clear that the "*sole concern* of the Fifth Amendment . . . is governmental coercion." <u>Colorado v. Connelly</u>, 479 U.S. 157, 170 (1986) (emphasis added).

[2] Despite his lack of English-speaking abilities, Aviles-Naranjo demonstrated that he could communicate with and understand at least some English, as demonstrated by his ability to conduct a drug transaction with a confidential informant who spoke only English. Of course, the fact that his rights were read in Spanish at least twice means the court need not evaluate his grasp and understanding of the English language to determine the validity of his waiver.

3

"sole concern" of the Fifth Amendment. See Colorado, 479 U.S. at 170. In fact, Aviles-Naranjo admits that the officers were "professional, courteous and polite in their interaction" with him. (Memorandum In Support of Motion to Suppress 3.) Considering the totality of the circumstances, the court finds that his waiver was knowing, voluntary, and intelligent and therefore denies his Motion to Suppress the April 28, 2009, statements.

## III.

Aviles-Naranjo claims that the statements he made to Officer Stuart on May 6, 2009, when he returned to the RCPD should be suppressed because Officer Stuart violated his Fifth and Sixth Amendment rights by interrogating him while he had an ongoing relationship with his attorney. The court finds that Aviles-Naranjo was not in custody and no charges had been brought against him at the time he made those statements.

Miranda is triggered only when a person is both in custody and is being interrogated.[3] Custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda, 384 U.S. at 445. A person is not in custody for Miranda purposes when he "is not placed under arrest, voluntarily comes to the police station, and is allowed to leave unhindered by police after a brief interview." United States v. Jones, 818 F.2d 1119, 1123 (4th Cir. 1987) (referencing Oregon v. Mathiason, 429 U.S. 492 (1977)).

---

[3] If a person is being interrogated but is not in custody or is in custody but is not being interrogated, he has no Fifth Amendment Miranda rights. See United States v. Guay, 108 F.3d 545, 549 (4th Cir. 1997) ("Whenever a defendant is subject to a custodial interrogation, the defendant must be provided with his Miranda rights."); United States v. Bautista, 145 F.3d 1140, 1147 (10th Cir. 1998) (stating that "in order to implicate the Miranda-Edwards right to counsel prophylaxis, both a custodial situation and official interrogation are required. Absent either a custodial situation or official interrogation, Miranda and Edwards are not implicated.").

4

Aviles-Naranjo voluntarily went to the RCPD to retrieve his vehicles. While he was there Officer Stuart initiated a conversation with him regarding a firearm. The interrogation, however, was brief, and Aviles-Naranjo was allowed to leave unhindered. The court finds, therefore, that Aviles-Naranjo was not in custody at the time of this interrogation. Accordingly, the statements he made to Officer Stuart on May 6, 2009, were not obtained in violation of Miranda.

Aviles-Naranjo's Sixth Amendment argument also fails. The Sixth Amendment right to counsel only attaches "after the first formal charging proceeding." Moran, 475 U.S. at 428. In Moran, the Supreme Court considered whether the Sixth Amendment "protects the integrity of the attorney-client relationship regardless of whether the prosecution has in fact commenced 'by way of formal charge, preliminary hearing, indictment, information or arraignment.'" Id. at 428–29 (citation omitted). The defendant in Moran asserted that "[t]he right to noninterference with an attorney's dealings with a criminal suspect . . . arises the moment that the relationship is formed, or, at the very least, once the defendant is placed in custodial interrogation." Id. at 429. The Court summarily rejected the idea that "the existence of an attorney-client relationship could somehow independently trigger the Sixth Amendment right to counsel." Id. The Court went on to explain that,

> [a]s a practical matter, it makes little sense to say that the Sixth Amendment right to counsel attaches at different times depending on the fortuity of whether the suspect or his family happens to have retained counsel prior to interrogation. More importantly, the suggestion that the existence of an attorney-client relationship itself triggers the protections of the Sixth Amendment misconceives the underlying purposes of the right to counsel. The Sixth Amendment's intended function is not to wrap a protective cloak around the attorney-client relationship for its own sake any more than it is to protect a suspect from the consequences of his own candor. Its purpose, rather, is to assure that in any 'criminal prosecutio[n],' . . . the accused shall not be left to his own devices in facing

5

the 'prosecutorial forces of organized society.' By its very terms, it becomes applicable only when the government's role shifts from investigation to accusation. For it is only then that the assistance of one versed in the 'intricacies . . . of law' is needed to assure that the prosecution's case encounters 'the crucible of meaningful adversarial testing.'

Id. (citations omitted).

At the time Aviles-Naranjo made statements to Officer Stuart no formal charges had been brought against him. Therefore, he had no Sixth Amendment right to counsel. Aviles-Naranjo's ongoing relationship with his attorney does not justify suppression of his statements. Moran makes it clear that the existence of an attorney-client relationship does not independently trigger the Sixth Amendment right to counsel. Therefore, the court finds that Aviles-Naranjo's Sixth Amendment rights were not violated. Accordingly, the court denies Aviles-Naranjo's Motion to Suppress the May 6, 2009, statements.

## IV.

For the reasons stated herein, the court denies Aviles-Naranjo's Motion to Suppress.

**ENTER:** This September 22, 2009.

UNITED STATES DISTRICT JUDGE

6